UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAMES BRTALIK,

                                       MEMORANDUM AND ORDER

            Plaintiff,

    --against--                           CV-10-0010
                                          (Wexler, J.)

SOUTH HUNTINGTON UNION FREE
SCHOOL DISTRICT,

            Defendant.
----------------------------------------------------------X

       THE LAW OFFICE OF BORELLI & ASSOCIATES, P.L.L.C.
       BY: MICHAEL J. BORELLI, ESQ.
       One Old Country Road Suite 347
       Carle Place, New York 11514
       Attorneys for Plaintiff

       INGERMAN SMITH, L.L.P.
       BY: CHRISTOPHER VENATOR, ESQ.
            ETHAN D. BALSAM, ESQ.
       150 Motor Parkway, Suite 400
       Hauppauge, New York 11788
       Attorneys for Defendant

WEXLER, District Judge:

       This is an employment discrimination action commenced by Plaintiff James Brtalik ("Brtalik" or "Plaintiff") against the South Huntington Union Free School District (the "School District"). Plaintiff alleges federal claims pursuant to 42 U.S.C. §1983 ("Section 1983") and the Americans With Disabilities Act, 42 U.S.C. § 12102 (the "ADA"), as well as state law claims pursuant to the New York State Human Rights Law (the "NYSHRL"), and for intentional infliction of emotional distress.

       The Section 1983 claim asserts retaliation for Plaintiff's exercise of his First Amendment right to speak as to matters of public concern. The ADA claim asserts that Plaintiff suffered from several

1

disabilities over the years, and that he was denied accommodation, and retaliated against in connection with his complaints. The NYSHRL claim alleges a cause of action parallel to Plaintiff's Federal ADA claim. Finally, the intentional infliction of emotional harm claim alleges conduct rising to the outrageous level required by that cause of action. Presently before the court is Defendants motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint in its entirety. Plaintiff opposes the motion and seeks leave to re-plead any claim deemed insufficient. Plaintiff also seeks leave to amend his complaint to assert a claim pursuant to one of New York's "whistleblower" statutes – Section 75-b of the New York Civil Service Law. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

I. The Factual Allegations of the Complaint

Plaintiff is a fifty-one year old male who has been employed by the School District since 1988. He became a permanent civil service employee in 1990. In 1992, Plaintiff was promoted to the position of AV Technician at a high school located within the District. The facts surrounding his different claims of discrimination are outlined below. Those facts are drawn from the pleadings and documents of which the parties are aware, and upon which they rely. The facts alleged are construed as true, and in favor of Plaintiff, the non-moving party.

A. Factual Allegations in Support of First Amendment/Whistleblower Claims

Much of the factual backdrop forming the basis of Plaintiff's First Amendment claim centers around his relationship with Matt Harris ("Harris"), a co-worker who began working with Plaintiff in 1992. The statements alleged to be protected by the First Amendment are comprised mostly of Plaintiff's complaints regarding a hostile working environment alleged to have been created by Harris. Plaintiff's complaint describes, in detail, written correspondence sent by Plaintiff to various District administrators complaining of his treatment by Harris. In addition to statements advising the District

2

of his treatment at the hands of Harris, Plaintiff's First Amendment claim is based upon speech advising the District of Harris' on the job conduct. Specifically, Plaintiff alleges First Amendment protection for statements he made to District administrators advising them that Harris lost a key to the high school projection booth. Plaintiff alleges that the loss of this key resulted in leaving the booth accessible to students who could injure themselves while unsupervised and/or steal District property. Plaintiff also claims First Amendment protection for advising the District that, although he was asked to do so, he refused to make copies of copyrighted videotaped material.

    B.    <u>Factual Allegations in Support of ADA Claim</u>

The facts forming the basis of Plaintiff's ADA claims allege a series of disabilities. First, Plaintiff alleges that he suffered a torn meniscus while at work in 2002. This knee injury is alleged to have kept Plaintiff out of work for a three week period. Plaintiff also states that he suffered from an anxiety disorder as a result of the hostile work environment in which he was forced to work. Also alleged are a series of other intermittent disabilities that include a 2006 elbow injury that forced Plaintiff to "have his duties restricted temporarily," tests for potential heart problems, a 2006 bout of heel pain diagnosed as plantar fascitis, pneumonia while on vacation in 2008, and a June 2009 colonoscopy/polypectomy, after which Plaintiff's doctor advised the District that Brtalik would be restricted to "light duty and no heavy lifting for a period of two weeks." Plaintiff alleges that he was denied reasonable accommodation after suffering each of the above disabilities. He also alleges retaliation after engaging in activities protected by the ADA.

II.    <u>Administrative Proceedings</u>

Plaintiff filed a charge of discrimination with the EEOC on September 28, 2009. The charge, alleging a violation of Title VII and the ADA was forwarded by the EEOC to the District Director of Human Resources. Plaintiff's EEOC charge set forth, in even greater detail than the complaint before this court, factual allegations supporting his claims of discrimination. Plaintiff alleged disability

discrimination and retaliation that had been ongoing since 2002. The District submitted a detailed response refuting Plaintiff's claims of discrimination. On October 23, 2009, the EEOC mailed Plaintiff a "right to sue" letter, informing him that the agency was unable to conclude that the information it obtained established a violation of law. This action followed.

III. Plaintiff's Causes of Action

As noted, Plaintiff's complaint sets forth four separate causes of action. Plaintiff's first cause of action alleges an ADA claim for failure to accommodate, disability discrimination and retaliation. Plaintiff's second claim alleges a parallel claim pursuant to the NYSHRL. Plaintiff's third claim alleges a state law claim for the tort of intentional infliction of emotional distress. Finally, Plaintiff's fourth cause of action claim alleges a Section 1983 claim for violation of Plaintiff's First Amendment rights.

IV. The Motion to Dismiss

Defendants seeks dismissal of all of Plaintiff's causes of action. All state law claims are sought to be dismissed on the ground that Plaintiff failed to file a notice of claim with the appropriate governing body pursuant to Section 3813 of the New York State Education Law ("Section 3813"). Even assuming proper notice of claim, the state law claims are sought to be dismissed for failure to state a claim.

As to the federal claims, the First Amendment claim is sought to be dismissed on the ground that Plaintiff did not engage in Constitutionally protected speech. The ADA claim of discrimination is sought to be dismissed on the ground that Plaintiff was not disabled within the meaning of the ADA. The ADA retaliation claim, which is not contingent on a finding of a disability, is nonetheless sought to be dismissed on the ground that Plaintiff suffered no adverse employment action. In the event that the Federal claims are dismissed, but the state law claims survive, Defendant asks that the court decline to exercise supplemental jurisdiction over the State law claims. Plaintiff opposes all aspects of the

4

motion to dismiss and, in the alternative, seeks leave to re-plead any claim held to be insufficient. After outlining applicable law, the court will turn to the merits of the motions.

## DISCUSSION

I.   Standards on Motion to Dismiss

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. The "retirement" of Conley's language, see Bell Atlantic Corp., 127 S. Ct. at 1969, is not a wholesale rejection of the general pleading rules to which federal courts have become accustomed. Instead, it is a rejection of Conley's "negative gloss" on the accepted pleading standard that once a claim is stated, it may be supported by any set of facts consistent will the allegations of the complaint. Bell Atlantic Corp., 127 S. Ct. at 1969. Indeed, shortly after its decision in Bell Atlantic, the Court reiterated that the pleading of specific facts in support of a complaint is not necessary. Instead, a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erikson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

The "plausibility" language used by the Supreme Court in Bell Atlantic, has not been interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir.2007) (emphasis in original). Further, courts have noted that while heightened factual pleading is not the new order of the day, Bell Atlantic holds that a "formulaic recitation of the elements of a cause of action

5

will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, Bell Atlantic Corp., 127 S. Ct. at 1959.

In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. Watts v. Services for the Underserved, 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing her lawsuit. See Brass v. Amer. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Watts, 2007 WL 1651852 *2.

II.  State Law Claims: Failure to File Notice of Claim

Section 3813 provides, in pertinent part, that no action may be maintained against a school board "unless a written verified claim upon which such . . . action is founded was presented to the governing body," of the school district. N.Y. Educ. Law § 3813(1); see also Sainato v. Western Suffolk Boces, 242 A.D.2d 301, 301 (2d Dept.1997). It is well settled that compliance with Section 3813 is a condition precedent to commencement of an action against a school board, its members or employees. Parochial Bus Sys., Inc. v. Board of Educ. of the City of New York, 470 N.Y.S.2d 564, 568 (1983); see Carlson v. Geneva City School Dist., 679 F.Supp.2d 355, 366 (W.D.N.Y. 2010); Angarano v. Harrison Cent. Sch. Dist., 2007 WL 102348 at *4 (N.Y. County 2007). The New York Court of Appeals has strictly construed this notice of claim requirement, and has rejected "proposals to compromise the strict statutory notice of claim requirement, because to do so would lead to uncertainty

and vexatious disputes." Varsity Transit, Inc. v. Board of Educ. Of the City of new York, 806 N.Y.S.2d 457, 459 (2005). Thus, failure to comply with the statute's specific requirements with regard to timeliness and service on the proper "governing body," are recognized as fatal to the pursuit of a claim. Parochial Bus Sys., 470 N.Y.S.2d at 568. As to the last-noted requirement, i.e., that the claim be presented to the appropriate governing body, New York's highest court has noted that "the statutory prerequisite is not satisfied by presentment to any other individual or body, and, moreover, the statute permits no exception regardless of whether the Board had actual knowledge of the claim or failed to demonstrate actual prejudice." Id. (emphasis added); see Lewinter v. New York City Dep't. of Educ., 2010 WL 2746334 *3 (S.D.N.Y. 2010); Avgerinos v. Palmyra-Macedon Central School Dist., 690 F.Supp.2d 115, 125 (W.D.N.Y. 2010).

Despite this clear language of strict construction, both Federal and New York State courts have considered whether documents other than a notice of claim can be deemed sufficient to satisfy the Section 3813 notice of claim requirement. Holdings in these cases, which include a prior decision of this court, are not uniform. See generally Lewinter, 2010 WL 2746334 *3 (noting disagreement among courts). Thus, some courts, including this court, have held that service of an EEOC charge is sufficient to comply with Section 3813. See, e.g., Donlon v. Board of Educ. of the Greece Cent. Sch. District, 2007 WL 108470 * 3 (W.D.N.Y. 2007) (EEOC charge sufficient to comply with Section 3813 notice of claim requirement); Kushner v. Valenti, 285 F. Supp.2d 314, 316 (E.D.N.Y 2003) (EEOC notice served on school district Director of Personnel held sufficient to comply with Section 3813); Menella v. Uniondale Union Free Sch. Dist., 732 N.Y.S.2d 40, 41- 42 (2d Dep't 2001) (petition served on Commissioner of Education seeking review of determination as to propriety of employment termination held to be "functional equivalent" of Section 3813 notice of claim). Other courts have strictly interpreted Section 3813, and dismissed claims where there has not been meticulous compliance with the statute. See, e.g., Lewinter, 2010 WL 2746334 *3 (complaint cannot serve as

notice of claim where issues sought to be raised in state law claim differed from those in complaint); Avgerinos, 690 F.Supp.2d at 127-28 (failure to serve board of education fatal to NYSHRL claim); Geneva, 670 F. Supp.2d at 366 (service of internal complaint and/or EEOC complaint held not to be required service on "governing body" as required by Section 3813); McCann v. State, 694 N.Y.S.2d 328, 333 (N.Y. Ct. Cl. 1999) (Section 3813 requires service of notice of claim against school district to be served on district board of education).

The court has reviewed the case law, along with the decisions of the New York Court of Appeals as set forth above, and now holds as follows. An EEOC complaint can serve as a substitute for the Section 3813 notice of claim only under the rare and limited circumstance where the EEOC charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district (and not a different arm of the district), and is served within the statutory time period. Accord Ximines v. George Wingate High School, 2006 WL 2086483 *11 (E.D.N.Y. 2006), aff'd., 516 F.3d, 159 n.2 (2d Cir. 2008) (noting agreement with district court decision denying motion to amend as futile in light of failure to comply with notice of claim statute). Because Plaintiff here did not comply with at least one of these requirements, i.e., the EEOC charge was not served on the School District's governing body, the charge cannot serve as a substitute for the Section 3813 notice of claim. Accordingly, the state law claims must be dismissed. Accord Newman v. Leroy Cent. Sch. District, 2008 WL 974699 *4 (W.D.N.Y. 2008)

The court recognizes that this holding is in conflict with the holding of this court in Kushner, wherein it was held that service on a school district's "Director of Personnel" satisfied Section 3813. Kushner 285 F. Supp.2d at 315-16. Consideration of case law developed subsequent to Kushner, particularly the holding of the Court of Appeals in Varsity Transit, however, leads this court to conclude that service of notice of a claim on any entity that is not the statutory governing body, with in the meaning of Section 3813, is insufficient to comply with the statute.

8

For the foregoing reasons, the court dismisses Plaintiff's claim pursuant to the New York State Human Rights Law as well as the claim for intentional infliction of emotional harm. The court turns to consider the viability of the Federal Claims.

III. The First Amendment Claim

    A.  Legal Principles

When deciding whether a public employee states a First Amendment claim for retaliation, the court must consider first whether the speech forming the basis of plaintiff's claim is protected speech. In Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), the Supreme Court of the United States held, generally, that statements made pursuant to an employee's official duties are not protected by the First Amendment. Garcetti v. Ceballos, 126 S. Ct. 1951 (2006); see also Ruotolo v. City of New York, 514 F.3f 184, 188-89 (2d Cir. 2008); Skehan v. Village of Mamaroneck, 465 F.3d 96, 105 (2d Cir. 2006); Benvenisti v. City of New York, 2006 WL 2777274 *7 (S.D.N.Y. September 23, 2006). In such cases, statements are not considered to be made "as a citizen," the Constitution does not interfere with employer discipline, and there is no First Amendment claim. Skehan, 465 F.3d at 105.

The question of whether an employee speaks pursuant to his official duties is not always easy, and Garcetti sets forth no dispositive test. Noting, however, that the test should be "a practical one," the Supreme Court stated that "formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform." Garcetti, 126 S. Ct. at 1961-62. The controlling factor supporting dismissal of the claim in Garcetti was the fact that the speech was clearly undertaken pursuant to plaintiff's duty to advise his supervisor as to how to proceed with a pending matter. Id. at 1959-60. Following Garcetti, courts in this Circuit have dismissed complaints for example, where the statements at issue were a safety officer's report on environmental risks, see Ruotolo, 514 F.3d at 188-90; and where the speech was a police officer's statement regarding the dismissal of traffic summonses, see Brewster v. City of Poughkeepsie, 434 F. Supp.2d 155, 157 (S.D.N.Y. 2006).

9

In cases where an employee is determined to be speaking as a citizen, Garcetti does not bar the claim, and the court moves on to consider a second level of analysis. Specifically, the court considers: (1) whether the speech relates to a matter of public concern; (2) whether the employee suffered adverse employment action, and (3) whether the speech was a motivating factor in the employment action taken. Skehan, 465 F.3d at 105-06; Ricioppo v. County of Suffolk, 2009 WL 577727 *9 (E.D.N.Y. 2009). As to the first factor, speech on matters of private concern, is not constitutionally protected. Reuland v. Hynes, 460 F.3d 409, 415 (2d Cir. 2006). Whether the speech relates to a matter of public concern is an issue of law for the court. Reuland, 460 F.3d at 414. Speech will be determined to be of public concern if it "relates to any matter of political, social, or other concern to the community." Reuland, 460 F.3d at 415, quoting, Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003). The nature of speech is determined by "the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 145-48 (1983). When determining whether particular speech is protected, the speaker's motivation as to whether she speaks of a matter of public concern is not dispositive. Sousa v. Roque, 578 F.3d 164, 173 (2d Cir. 2009). Rather, it is one factor to be considered. Id. Nonetheless, speech concerning an "employee's dissatisfaction with conditions of his employment, is usually unprotected." Harris v. South Huntington Sch. District, 2009 WL 875538 *12 (E.D.N.Y. 2009); see Sousa, 548 F.3d at 174. Where an employee asserts that employment-related speech is actually a matter of public concern, the court must consider whether the rationale offered is "simply a vehicle for furthering private interests." Harris, 2009 WL 875538 *12. "The key inquiry is whether the statements were made by plaintiff in [his] role as a disgruntled employee or [his] role as a concerned citizen." Id., quoting, Hanig v. Yorktown Cent. Sch. District, 384 F.Supp.2d 710, 722 (S.D.N.Y. 2005).

B.  Disposition of the First Amendment Claim

Plaintiff's complaint sets forth in detail the statements that are alleged to form the basis of his First Amendment claim. These statements, as detailed above, are complaints about the hostile environment alleged to have been created by Harris, and the reporting of inappropriate conduct by Harris, i.e., the loss of the projection room key. The final statement upon which Plaintiff's First Amendment claim relies is his statement regarding the copying of copyrighted videotapes.

The court has no difficulty concluding that all of the statements offered in support of Plaintiff's First Amendment claim were made in the course of his duties at the District and therefore, were statements made as a District employee, and not as a citizen. Accordingly, under the rule of Garcetti, the statements cannot form the basis of a First Amendment claim. Statements made concerning Plaintiff's work environment, and his working relationship with Harris and any other District employees were clearly made in the course of his duties. The court rejects the argument that Plaintiff's allegations about the projection room key were made in Plaintiff's capacity as a citizen because the loss of that key could have led to student injury and/or theft of District property. These statements were made in the course of Plaintiff's employment and pursuant to his duties. Similarly, any statement regarding the direction to make copies of videotapes was made in the course of Plaintiff's duties as an AV technician and, despite the allegation of copyright violation, cannot support a First Amendment claim under Garcetti.

Even if the court were to assume that Plaintiff's First Amendment claim passed the Garcetti hurdle, they would nonetheless fail to state a First Amendment claim because no statement relied upon expresses a matter of public concern. Instead, each and every statement forming the basis of Plaintiff's First Amendment claim refers to conditions of his employment and complaints about his co-workers and his duties. It is interesting, although not dispositive of the matter, that similar complaints were made about Brtalik in a lawsuit filed by his co-worker, Harris, against the District. See Harris, 2009

11

WL 875538 *12 (E.D.N.Y. 2009). The court in that case held that such complaints about co-workers were not matters of public concern, but statements that were likened to those of a "disgruntled employee." Id The court here reaches the same conclusion and, for all of the foregoing reasons, dismisses the First Amendment claims for failure to state a claim.

In light of the fact that Plaintiff's complaint sets forth in great detail, all statements alleged to support his First Amendment claim, it would be futile to allow amendment of this claim. It is clear to the court that Plaintiff has already pled all statements alleged to be protected. Those statements cannot support a First Amendment claim. Accordingly, Plaintiff's Section 1983 claim is dismissed without leave to replead.

IV. The ADA Claims: Discrimination and Retaliation

A. Elements of an ADA Discrimination/Failure to Accommodate Claim

To state a prima facie case of discrimination pursuant to the ADA a plaintiff must show: (1) that the employer is subject to the ADA; (2) that he has a disability within the meaning of the statute; (3) that he was otherwise qualified to perform the essential functions of his position, with or without reasonable accommodation; and (4) that he was fired or suffered adverse employment action because of the disability. Heyman v. Queens Village Committee for Mental Health for Jamaica Community, 198 F.3d 68, 72 (2d Cir. 1999); Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998); Sacay v. Research Foundation of the City University of New York, 44 F. Supp. 2d 496, 500 (E.D.N.Y. 1999). Claims based upon disability discrimination or failure to accommodate both require proof of a disability, within the meaning of the ADA. Villanti v. Cold Spring Harbor Cent. School District, 2010 WL 3303375 *3 (E.D.N.Y. 2010).

i. Disability Within the Meaning of the ADA

The 2008 Amendment to the ADA ("ADAA"), modifies the standard to be applied when determining whether an individual is disabled within the meaning of the ADA. See generally 42

12

U.S.C. §12102(4). While the terms of the statute were not changed, the interpretation of those terms was modified. Specifically, the ADAA overturns the Supreme Court's holdings in <u>Sutton v. United Air Lines</u>, 527 U.S. 471 (1999), and <u>Toyota Motor Manufacturing v. Williams</u>, 534 U.S. 184 (2002), which called for strict interpretation of the ADA's statutory terms. The ADAA rejects the holding in <u>Sutton</u>, which held, generally that the substantial limitation issue is to be determined with reference to the ameliorative effects of mitigating measures. <u>See</u> 42 U.S.C. §12102(4)(E)(i). The statute also rejects the approach of the Supreme Court in <u>Toyota</u>, that strictly interpreted the term "substantially limited" to include only impairments that "prevent" or "severely restrict" activities. <u>See</u> 42 U.S.C. 12102 §4(B). The ADAA states that it does not take effect until January 1, 2009. Thus, the definition of disability to be applied to all of Plaintiff's claims (with the exception of the single claim regarding the 2009 colonoscopy) is the pre-amendment ADA definition, as discussed below. <u>Accord</u> <u>Villanti</u>, 2010 WL 3303375 *4.

The ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2); <u>Schaefer v. State Ins. Fund</u>, 207 F.3d 139, 142 (2d Cir. 2000); <u>Ryan</u>, 135 F.3d at 869; <u>Zuppardo v. Suffolk County Vanderbilt Museum</u>, 19 F. Supp.2d 52, 54 (E.D.N.Y. 1998), <u>aff'd</u>, 173 F.3d 848 (2d Cir. 1999). Also defined as a disabilities under the ADA are a record of having a disability or being perceived as having a disability, 42 U.S.C. § 12101(2).

Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing speaking, breathing, learning and working. 29 C.F.R. §1630.2(j). As noted above, for claims arising prior to January 2009, those who are substantially limited in major life activities are either unable to perform such activities or significantly restricted as to the manner or duration under which the activity may be performed. <u>See</u> 29 C.F.R. §1630.2(j)(1).

While all impairments may be argued to affect a major life activity, every impaired person is not disabled within the meaning of the ADA. To determine disability it is appropriate to distinguish

13

between impairments that merely "affect" a major life activity – which are not ADA disabilities – and those that "substantially limit" major life activities – which are ADA disabilities. Ryan, 135 F.3d at 870. When determining whether there is a substantial limitation the court considers: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment and (3) the permanent or long term impact resulting from the impairment. Id. § 1630.2(j)(2).

ii. Regarded as Disabled

In addition to actual disability, the ADA defines disability to include being "regarded as" disabled. 42 U.S.C. § 12102(2)(A)-(C). The pre-2009 definition of perceived disability includes only those disabilities that are perceived to substantially limit major life activities. Ragusa v. Malverne Union Free School District, 2010 WL 2490966 *2 (2d Cir. 2010). For post-2009 perceived disabilities, a plaintiff is not required to show a perception that the alleged disability "is perceived to limit a major life activity." See 42 U.S.C. § 12102(3)(A). However, even for disabilities arising after January of 2009, a perceived disability claim may not be based upon an impairment that is "transitory and minor." Such transitory impairments are defined as those "with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Accordingly, with respect to any claim of disability prior to January 1, 2009, where the claim is one of being perceived as disabled, plaintiff must show that the employer regards the plaintiff as disabled within the meaning of the ADA, and not merely that plaintiff is regarded as having some measure of a disability or impairment. See Ryan, 135 F.3d at 872. Thus, to state a claim for perceived disability, a plaintiff must show that the employer perceived the plaintiff as substantially limited in a major life activity. With respect to claims arising after the effective date of the ADA amendment referred to above, Plaintiff need not comply with the strict definition regarding perception, but must at least show a disability that is not transitory and minor. 42 U.S.C. § 12102(3)(B).

14

B.   Elements of an ADA Retaliation Claim

The ADA prohibits retaliation against individuals asserting rights under the statute. 42 U.S.C. § 12203(a). A prima facie case of retaliation under the ADA exists only if the plaintiff can show: (1) engagement in an activity protected by the ADA; (2) the employer's awareness of that activity; (3) employment action adverse to the plaintiff, and (4) a causal connection between the protected activity and the adverse employment action. Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir 2000), quoting, Sarno v. Douglas-Elliman Gibbons & Ives, 183 F.3d 155, 159 (2d Cir. 1999).

A finding that a plaintiff is not disabled within the meaning of the ADA does not necessarily preclude a retaliation claim. To go forward with such a claim, however, the plaintiff satisfies the "protected activity" prong of the prima facie case by demonstrating a "good faith, reasonable belief" that his employer violated the law. Muller v. Costello, 187 F.3d 298, 311 (2d Cir. 1999).

C.   Disposition of the ADA Discrimination/Failure to Accommodate Claim

As noted, Plaintiff's alleged disabilities are:

- a 2002 torn meniscus (knee injury), which kept Plaintiff out of work for three weeks;
- unspecified anxiety disorder as a result of the hostile work environment in which he was forced to work;
- a 2006 elbow injury that forced Plaintiff to "have his duties restricted temporarily;"
- tests for potential heart problems;
- a 2006 bout of heel pain diagnosed as plantar fascitis;
- pneumonia while on vacation in 2008, and
- a 2009 colonoscopy/polypectomy, after which Plaintiff's doctor advised the District that Brtalik would be restricted to "light duty and no heavy lifting for a period of two weeks.

The conditions alleged above took place over an extended period of time, and Plaintiff does not allege that they occurred simultaneously. The conditions are not symptoms associated with the same

15

disease or disorder, and are not episodic or characteristics of a single disease that is variously active or in remission. The court is doubtful that such various and unrelated maladies can be construed to constitute an ADA disability. Indeed, Plaintiff himself indicates that these disabilities were short-lived, requiring only intermittent and short breaks from work or certain duties. Nonetheless, the court is unwilling to dismiss, at this juncture and as a matter of law, Plaintiff's claims of disability and failure to accommodate. Discovery may reveal that Plaintiff never suffered from an ADA disability and/or that he was properly accommodated. The court also notes that it is premature to rule on the issue of whether Plaintiff was subject to any adverse employment action. In light of these factual issues, the court denies the motion to dismiss the ADA claims of disability and failure to accommodate.

D.   Disposition of the Perceived Disability Claim

With respect to the claim that Plaintiff was perceived as disabled, the court notes that no such claim is set forth either in Plaintiff's charge before the EEOC, or in Plaintiff's complaint here. The evidence relied upon in support of Plaintiff's attempt to amend his complaint to state such a claim, shows not that Plaintiff was perceived as disabled, but exactly the opposite of such a perception. Without going into great detail, that evidence, including statements attributed to Mr. Morgan, shows not a perception of disability, but a perception that Plaintiff was a malingerer. Such statements do nothing to support an ADA claim based upon a perception of disability. See 42 U.S.C. § 12102(1)(C); 42 U.S.C. § 12102(3)(B). For the foregoing reasons the court dismisses, without leave to re-plead any ADA claim alleging a perceived disability.

E.   Disposition of the ADA Retaliation Claim

A finding that a plaintiff is not disabled within the meaning of the ADA does not necessarily preclude a retaliation claim. Instead, Plaintiff must show only that he engaged in protected activity, of which the District was aware, and adverse employment action causally related to that activity. See generally Weissman, 214 F.3d at 234.

16

Defendant seeks dismissal of the retaliation claim on the grounds that Plaintiff suffered no adverse employment action. As noted above, the court cannot, at this point in the proceedings, make a finding as to whether Plaintiff suffered adverse employment action. Nor can the court make findings regarding a causal connection between any employment decisions, and Plaintiff's alleged protected activity. Documents submitted by Defendant both before the EEOC and this court reveal that important questions of fact regarding the parties' motivations cannot be decided in the context of a motion to dismiss. Accordingly, the court denies the motion to dismiss the ADA retaliation claim.

V.    Whistleblower Claim

As to the request to amend the complaint to allege a state law claim of retaliation under Section 75-b of the Civil Service Law ("Section 75-b"), the court will deny the request. Section 75-b is one of New York State's "whistleblower" laws. Williams v. County of Nassau, 684 F.Supp.2d 268, 295 n.22 (E.D.N.Y. 2010). The law prohibits a public employer from terminating, or taking other adverse employment action against a public employee "because the employee discloses to a government body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action." N.Y. Civ. Serv. Law § 75-b(2)(a).

Like Plaintiff's other claims, any claim made pursuant to Section 75-b requires the prior filing of a statutory notice of claim. As Plaintiff has failed to file that notice, and because the EEOC claim alleging a violation of the ADA is insufficient to put the District on notice of a claim under Section 75-b, the court denies as futile, the motion to amend to assert such a claim. See Milanese v. Rust-Oleum Corporation, 244 F.3d 104, 110 (2d Cir.2001); Hall v. North Bellmore Union Free School Dist., 2010 WL 1049280 *3 (E.D.N.Y. 2010) (motion to amend properly denied as futile where proposed claim would not survive a motion to dismiss).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted to the extent that the court dismisses Plaintiff's state law claims for failure to file the statutory notice of claim. The court dismisses Plaintiff's Section 1983 First Amendment claim. The court dismisses any ADA claim based upon the allegation that Plaintiff was perceived as disabled. The court denies leave to re-plead any dismissed claim. The claims that remain are the ADA discrimination/failure to accommodate claims and the ADA claim of retaliation. The Clerk of the Court is directed to terminate the motion to dismiss, and the parties are to continue with ongoing pretrial procedures, geared toward discovery of facts within the parameters of the claims that remain.

SO ORDERED

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
October 6, 2010